UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Theresa LaFave,                                                File No. 19-cv-1801 (ECT/LIB)

    Plaintiff,

v.                                                             **OPINION AND ORDER**

Nationstar Mortgage LLC
d/b/a Mr. Cooper,

    Defendant.

---

Theresa LaFave, *pro se*[1]

Kristina Kaluza and Michael A. Stephani, Dykema Gossett PLLC, Minneapolis MN, for Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper.

---

Plaintiff Theresa LaFave brought this case to challenge Defendant Nationstar Mortgage LLC's foreclosure on her home.  In December 2019, the Parties notified the Court that they had reached a settlement.  After LaFave failed to meet her obligations under the settlement, Nationstar filed a motion to enforce the settlement or, alternatively, to dismiss the case with prejudice pursuant to Federal Rule of Civil Procedure 41(b).  Nationstar's motion to enforce the settlement will be granted because the record demonstrates that the Parties reached a valid and enforceable agreement.

---

[1] LaFave was represented by Christopher Wilcox and Carl E. Christensen of the Christensen Law Office, PLLC, Minneapolis, MN, including at the time the settlement at issue was reached.  As will be explained, these lawyers have since withdrawn from representing LaFave.

I

In 2009, LaFave obtained a mortgage on her home from Summit Mortgage Corporation. Compl. ¶ 5 [ECF No. 1-1]. Summit subsequently assigned LaFave's mortgage to Bank of America, and, in September 2017, Bank of America assigned and transferred all rights, title, and interest in her mortgage to Nationstar. *Id.* ¶¶ 6, 11, 12. In late 2017 and continuing throughout 2018, LaFave fell behind on her mortgage payments; she made partial payments until Nationstar refused to accept them. *Id.* ¶¶ 13–14. In October 2018, allegedly without first providing notice of default to LaFave, Nationstar published notice of a mortgage foreclosure sale of LaFave's home. *Id.* ¶ 15; *see id.* 18, 23–24. The notice provided for a sale date of December 18, 2018, and a redemption deadline of June 18, 2019. *Id.* ¶ 16. Before the sale, Nationstar sent LaFave a letter informing her that her mortgage loan had been referred to an attorney to commence a foreclosure. *Id.* ¶ 27. Though LaFave "diligently attempt[ed] to accumulate the funds necessary" to reinstate her mortgage, *id.* ¶¶ 28–31, the foreclosure sale occurred as scheduled, and LaFave's home was sold to Nationstar for $97,527.35, *id.* ¶ 32. After the sale, both LaFave and her attorney contacted Nationstar to request reinstatement of her mortgage, but their requests were unsuccessful. *Id.* ¶¶ 33–36.

On June 18, 2019, the redemption deadline, LaFave commenced an action against Nationstar in Minnesota state court, asserting a common law breach-of-contract claim and statutory claims based on Nationstar's foreclosure.[2] Notice of Removal ¶ 1 [ECF No. 1];

---

[2]   LaFave asserts four claims in her complaint: (I) Violation of Foreclosure by Advertisement Statute, Failure to Strictly Comply with Foreclosure by Advertisement

2

Compl. LaFave sought an order "voiding the December 18, 2018 sheriff's sale of [her] home and restoring her as fee title owner as a result of [Nationstar's] violations" as well as actual damages, statutory damages, and attorney fees. Compl. at 11. Nationstar timely removed the case to this Court.[3] The Parties engaged in settlement negotiations. The Parties executed a Memorandum of Understanding, dated December 6, 2019, containing material terms, though Nationstar was to prepare a document that included more detailed terms. Kaluza Decl., Ex. A [ECF No. 30]. Counsel for both sides signed the Memorandum. *See id.* Among other terms, the Memorandum of Understanding provided LaFave with the opportunity to reinstate or pay off her mortgage. In February 2020, after LaFave failed to exercise any of the options described in the Memorandum, Nationstar contacted LaFave's attorney to inquire about LaFave's intentions. *Id.*, Ex. E [ECF No. 34]. LaFave's attorney informed Nationstar that he would let them know when he received a response from LaFave. *Id.* LaFave took no further action.

On May 1, LaFave's attorney filed a motion to withdraw from the case. Mot. to Withdraw [ECF No. 19]. Nationstar opposed the motion to withdraw on the basis that LaFave's attorney had negotiated the Parties' settlement and executed the Memorandum

---

Requirements (Minn. Stat. §§ 580.01 et seq.); (II) Breach of Contract; (III) Violation of the Minnesota [Residential] Mortgage Originator and Servicer Licensing Act, Failure to Comply with State Law (Minn. Stat. § 58.01 et seq.); and (IV) Quiet Title (Minn. Stat. § 559.01).

[3]   Subject-matter jurisdiction exists over this case under 28 U.S.C. § 1332. Notice of Removal ¶ 6. The Parties are of diverse citizenship. LaFave is a Minnesota citizen and Nationstar is a citizen of both Delaware and Texas. *Id.* ¶¶ 7–8. The amount in controversy satisfies the jurisdictional threshold. *Id.* ¶¶ 9–11.

3

of Understanding and that it would benefit the Court for her attorney to continue representation until its anticipated motion to enforce settlement was decided. Mem. in Opp'n to Mot. to Withdraw [ECF No. 24]. After holding a hearing, Magistrate Judge Leo I. Brisbois granted the motion to withdraw. Order [ECF No. 44]. His order sheds some light on the breakdown of the Parties' settlement. LaFave's attorney last had direct contact with her on January 24, 2020. *Id.* at 2; *see* Kaluza Decl., Ex. B [ECF No. 31]. LaFave's attorney subsequently attempted to contact her through phone, mail, and email approximately 25 to 35 times between January and May and received no response. Order at 2–3.

Nationstar now seeks to dismiss the case with prejudice pursuant to the Parties' settlement or, alternatively, for failure to prosecute.[4] Mot. to Enforce [ECF No. 25]; *see* Kaluza Decl., Ex. A ¶ 2. LaFave was served with Nationstar's motion, supporting documents, and notice of the hearing on this motion but did not file a response or appear at the June 29 motion hearing.[5] *See* Cert. of Service [ECF No. 46].

II

"It is well established that a district court possesses the inherent or equitable power summarily to enforce an agreement to settle a case pending before it." *Butler v. LeeAnn*

---

[4] Nationstar is not seeking to evict LaFave from the home through this action and has not commenced an eviction action in Minnesota state court in "compl[iance] with the CARES Act Eviction Moratorium." *See* Redacted Mem. in Supp. at 5 n.2 [ECF No. 28].

[5] Prior to the start of the motion hearing, court staff checked the vicinity of the courtroom and confirmed that LaFave was not present.

*Chin's Cuisine*, No. 07-cv-3317 (PJS/JJG), 2008 WL 819767, at *2 (D. Minn. Mar. 25, 2008) (quoting *Luigino's Inc. v. Societes des Produits Nestle S.A.*, No. 03-cv-4186 (ADM/RLE), 2005 WL 735919, at *1 (D. Minn. Mar. 30, 2005), and citing *Wilson v. Wilson*, 46 F.3d 660, 664 (7th Cir. 1995), *Barry v. Barry*, 172 F.3d 1011, 1013 (8th Cir. 1999), *Bergstrom v. Sears, Roebuck and Co.*, 532 F. Supp. 923, 934 (D. Minn. 1982)). "Settlement agreements are governed by basic principles of contract law." *Sheng v. Starkey Labs., Inc.*, 53 F.3d 192, 194 (8th Cir. 1995) (citing Minnesota law in a Title VII federal-question case) (citing *St. Paul Fire & Marine Ins. Co. v. Nat'l Chiropractic Mut. Ins. Co.*, 496 N.W.2d 411, 415 (Minn. Ct. App. 1993)). "It is axiomatic that, in order to have a valid contract, there must be an offer, acceptance, and valid consideration, . . . and also a meeting of the minds as to the material terms of the contract." *Goddard, Inc. v. Henry's Foods, Inc.*, 291 F. Supp. 2d 1021, 1028 (D. Minn. 2003). "[A] contract is not formed unless the parties mutually assent to all material terms." *Sheng*, 53 F.3d at 194 (citing *Ryan v. Ryan*, 193 N.W.2d 295, 297 (Minn. 1971) (noting it is "well settled that a compromise and settlement . . . requires offer and acceptance so as to constitute a meeting of minds on the essential terms of the agreement")). "Minnesota follows the objective theory of contract formation, under which an outward manifestation of assent is determinative, rather than a party's subjective intention." *Speckel v. Perkins*, 364 N.W.2d 890, 894 (Minn. Ct. App. 1985) (citing *Markmann v. H.A. Bruntjen Co.*, 81 N.W.2d 858, 862 (Minn. 1957), *Cederstrand v. Lutheran Bhd.*, 117 N.W.2d 213, 221 (Minn. 1962)). "Only those terms upon which the settlement hinges are to be considered material terms," *Goddard, Inc.*, 291 F. Supp. 2d at 1028, and thus "[t]he fact that the parties left some details for counsel to

5

work out during later negotiations cannot be used to abrogate an otherwise valid agreement," *Sheng v. Starkey Labs., Inc.*, 117 F.3d 1081, 1083 (8th Cir. 1997).  As such, a court "may enforce a settlement agreement that contemplates the execution of a later written document."  *Sowada v. Luberts*, No. 09-cv-3320 (MJD/LIB), 2011 WL 1869208, at *5 (D. Minn. Mar. 28, 2011), *report and recommendation adopted as modified on other grounds*, 2011 WL 1843018 (D. Minn. May 16, 2011).

The Memorandum of Understanding executed by the Parties on December 6, 2019, contains the material terms of the Parties' settlement.  *See* Kaluza Decl., Ex. A; Mem. in Supp. at 2.  The Memorandum's first sentence says that the Parties "have reached a settlement."  Kaluza Decl., Ex. A.  The Memorandum identifies the property at issue, the obligations imposed on the Parties, and the deadlines for fulfilling those obligations.  It also provides for dismissal of this case with prejudice.  The signatures of the Parties' respective counsel at the bottom of the Memorandum are objective indications that the Parties mutually assented to the terms contained therein.  There is no evidence to suggest that LaFave's attorney did not have the authority to agree to those terms on her behalf.  Rather, the record reflects that he was in direct communication with LaFave for more than a month after the Parties executed the Memorandum and that LaFave, with the assistance of her attorney, initially took some steps toward complying with her obligations under the settlement.  *See* Kaluza Decl., Ex. B.  It is true that the Memorandum says that the "settlement is subject to a final written settlement agreement prepared by Nationstar that contains standard settlement terms."  *Id.*, Ex. A.  However, especially in view of the Memorandum's statement in the first sentence that the Parties "have reached a settlement,"

6

this phrase is best understood to mean that the Parties "left some details for counsel to work out." *Sheng*, 117 F.3d at 1083.  These unresolved details cannot abrogate, or justify a conclusion that the Parties did not reach, a binding settlement.  For these reasons, it is appropriate to conclude that the Parties reached a meeting of the minds as to the essential terms of the agreement sufficient to create a valid and enforceable settlement.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in the above-captioned matter, **IT IS ORDERED THAT**:

1. Defendant's Motion to Enforce Settlement or, alternatively, Dismiss for Lack of Prosecution [ECF No. 25] is **GRANTED**;

2. The above-captioned action is hereby **DISMISSED WITH PREJUDICE** in its entirety with each party to bear its own costs and attorney fees in connection with such claims.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 7, 2020                              s/ Eric C. Tostrud
                                                 Eric C. Tostrud
                                                 United States District Court